O

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCISCO CAZARES MEDINA, | NO. EDCV 13-1652-MAN |
| Plaintiff, | |
| v. | MEMORANDUM OPINION |
| CAROLYN W. COLVIN, | AND ORDER |
| **Acting Commissioner of Social Security,** | |
| Defendant. | |

## INTRODUCTION

Plaintiff filed a Complaint on November 1, 2013, seeking review of the denial of plaintiff's application for a period of disability and disability insurance benefits ("DIB"). On December 9, 2013, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (ECF Nos. 10, 11.) On December 2, 2014, the parties filed a Joint Stipulation ("Joint Stip.") in which plaintiff seeks an order reversing the Commissioner's decision and either remanding for further proceedings or awarding benefits to plaintiff. (Joint Stip. at 22.) The Commissioner requests that the ALJ's decision be affirmed or, in the alternative, that the case be remanded for further proceedings. (*Id.* 23) The Court has taken the matter under

submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On June 10, 2008, plaintiff, then 52 years old,[1] applied for a period of disability and DIB. (Administrative Record ("A.R.") 111.)  Plaintiff alleged disability commencing May 1, 2008, due to seizure disorder.  (*Id.* 147.)  Plaintiff had previously worked as a forklift operator and nursing assistant.  (*Id.* 33, 148.)

The Commissioner denied plaintiff's application initially (A.R.71-75) and on reconsideration (A.R. 77-80).  On December 11, 2009, plaintiff requested a hearing.  (A.R. 84-85.)  On May 3, 2010, plaintiff, who appeared with a representative, testified before Administrative Law Judge Kevin M. McCormick ("ALJ").  (A.R. 43-59.)  Martha Ramirez, plaintiff's sister, and Susan Allison, a vocational expert ("VE"), also testified.  (*Id.* 60-68.)  On August 12, 2010, plaintiff purportedly filed a Title XVI application for supplemental social security income ("SSI").[2]  (*Id.* 28; *see also* Joint Stip. at 2.)  On August 24, 2010, the ALJ issued an unfavorable decision denying plaintiff's claims for both DIB and SSI.  (*Id.* 28-35.)  On August 9, 2012, the Appeals Council denied plaintiff's request for review.  (*Id.* 5-10.)

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that plaintiff had not engaged in substantial gainful activity from his alleged onset date of May 1, 2008.  (A.R. 30.)  The ALJ determined that plaintiff had the severe medically determinable impairment of a seizure disorder.  (*Id.*)  The ALJ also concluded that plaintiff's impairment does not satisfy the requirements of a listed impairment in 20 C.F.R. part 404, subpart

---

[1]  Plaintiff was born on April 2, 1956 (A.R. 111.)

[2]  The Administrative Record does not include a copy of an application for SSI.

1  P, appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.926).  (*Id.*)

2        The ALJ determined that plaintiff had the residual functional capacity ("RFC") to perform

3  "a full range of work at all exertional levels but with the following nonexertional limitations:  the

4  claimant can never climb ladders, rope or scaffolds and must avoid even moderate exposure to

5  hazards (machinery, heights, etc.)."  (A.R. 31.)  The ALJ concluded that plaintiff was able to

6  perform his past relevant work as a nursing assistant.  (*Id.* 33.)  The ALJ also determined that

7  plaintiff was able to perform other jobs that exist in significant numbers in the national economy.

8  (*Id.* 34 (citing by way of example the jobs of "cleaner-hospital" (DOT 323.687-010), hand

9  packager (DOT 920-587-018), and dining room attendant (DOT 311.677-018)).)  Accordingly, the

10  ALJ found that plaintiff was not disabled.  (*Id.* 35.)

11

12  **STANDARD OF REVIEW**

13

14        Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine

15  whether it is free from legal error and supported by substantial evidence in the record as a whole.

16  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).  "Substantial evidence is 'more than a mere

17  scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might

18  accept as adequate to support a conclusion.'"  Gutierrez v. Comm'r of Soc. Sec., 740 F.3d 519,

19  522-23 (9th Cir. 2014) (internal citations omitted).  "Even when the evidence is susceptible to

20  more than one rational interpretation, we must uphold the ALJ's findings if they are supported by

21  inferences reasonably drawn from the record."  Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir.

22  2012).

23

24        Although this Court cannot substitute its discretion for that of the Commissioner, the Court

25  nonetheless must review the record as a whole, "weighing both the evidence that supports and

26  the evidence that detracts from the [Commissioner's] conclusion."  Lingenfelter v. Astrue, 504

27  F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted); Desrosiers v.

28  Sec'y of Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988).  "The ALJ is responsible for

3

determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely."  Orn, 495 F.3d at 630; see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).  The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'"  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Comm'r of Soc. Sec., 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Carmickle v. Comm'r of Soc. Sec., 533 F.3d 1155, 1162 (9th Cir. 2008).

## DISCUSSION

Plaintiff alleges two sources of error.  First, plaintiff claims that the ALJ did not properly evaluate plaintiff's credibility.  (Joint Stip. at 5, 6-9.)  Second, plaintiff contends that the ALJ did not properly evaluate the credibility of plaintiff's sister.  (Id. at 5, 19-21.)

## I.   The ALJ Properly Evaluated The Credibility Of Plaintiff's Testimony.

At the May 3, 2010 hearing, plaintiff testified that he has had seizures for 20 years, and in May 2008, he had a seizure at work that resulted in a trip to the emergency room.  (A.R. 52.) He testified that he has seizures "every month and every week" (A.R. 50) with his most recent seizure occurring the week before the hearing (A.R. 55).  Plaintiff testified that, every week, he has a "small," or petit, seizure that causes him to "stare into space" for a couple of minutes.  (A.R. 54.)  He testified that, "every month," he has a "big," or grand mal, seizure, which comes without

4

warning, renders him unconscious, requires medical attention, and necessitates a week-long recovery period during which he experiences muscle weakness and has difficulty walking and speaking.  (A.R. 53, 55, 56.)  Plaintiff testified that, although his seizure medications cause him to feel dizzy and off-balance (A.R. 55), he has been fully compliant with his medications since May 2008 (A.R. 51, 54), and no one has ever spoken to him about "compliance issues and sub-therapeutic levels" of his seizure medication following a hospital admission for a seizure (A.R. 51).

Plaintiff testified that he spends about an hour every day cleaning the house and sometimes also washes the dishes or does his laundry.  (A.R. 57.)  He stated that he can spend three hours on his feet before he starts to get tired and feel dizzy.  (*Id.*)  He tries to go for walks outside the house regularly, he eats dinner out with his sister "every weekend," and he sometimes goes out with his sister to visit friends.  (*Id.* 58.)  He said that he keeps himself busy during the day by reading, doing some exercises, and watching TV.  (*Id.* 59.)  He said that he takes naps two or three times a week.  (*Id.*)

The ALJ observed that plaintiff's testimony about the frequency and disabling effect of his seizures and the testimony of plaintiff's sister, Martha Ramirez, were similar.  The ALJ also found that "claimant's medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with [the ALJ's] residual functional capacity assessment."  (A.R. 31.)

An ALJ must make two findings before finding that a claimant's pain or symptom testimony is not credible.  Treichler v. Comm'r of Soc. Sec., __ F.3d __, No. 12-35944, 2014 WL 7332774, at *__ (9th Cir. Dec. 24, 2014).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Id.* (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007).)  "Second, if the claimant has produced that evidence, and the

1  ALJ has not determined that the claimant is malingering, the ALJ must provide specific, clear and

2  convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's

3  symptoms."  *Id*.  "General findings are insufficient."  *Id*. (quoting <u>Lester v. Chater</u>, 81 F.3d 821,

4  834 (9th Cir. 1995)).

5

6          Although the ALJ did not identify any evidence of malingering, he did extensively analyze

7  the consistency of plaintiff's testimony with the medical record, and he identified four clear and

8  convincing reasons for finding that "the objective evidence does not support the claimant's claims

9  of disabling limitations to the degree alleged."  (A.R. 32.)  First, the ALJ found that "none of the

10  claimant's physicians has opined that he is totally and permanently disabled from any kind of

11  work." (*Id*.)  Second, although plaintiff testified that he was compliant with prescribed treatment,

12  the ALJ found that the medical record shows "a number of episodes of subtherapeutic Dilantin

13  levels and noncompliance with anti-seizure treatment," and the ALJ observed that these episodes

14  were discovered because they preceded a seizure requiring medical attention.  (*Id*. (noting that

15  plaintiff had a seizure in July 2008, after he had stopped taking his Dilantin for a few weeks; in

16  August 2008 he had another seizure and subtherapeutic Dilantin levels; in October 2008, several

17  instances of subtherapeutic Dilantin levels were noted in connection with seizures resulting in trips

18  to the emergency room; in December 2008, plaintiff suffered a seizure instigated by

19  noncompliance with seizure medication); *see also* A.R. 428-30 (11/04/07 - emergency room visit

20  for seizure, low therapeutic Dilantin level observed), 410 - 412 (05/22/08 - emergency room visit

21  for seizure, subtherapeutic Dilantin level observed), 403 (07/10/08 - emergency room visit for a

22  tonic clonic seizure, severely low Dilantin levels observed, "patient's perception was that he was

23  taken off the Dilantin, although he has had three seizures and had been seizure free for two

24  years. [Primary care physician] does not relate taking the patient off the Dilantin.  There may have

25  been a misunderstanding"), 388 (08/15/08 - emergency room visit for seizure "most likely" due

26  to subtherapeutic Dilantin level), 539 (12/22/08 - "breakthrough seizure . . . highly suspicious of

27  noncompliance"), 379-81 (10/08/08 - emergency room visit for seizure, subtherapeutic Dilantin

28  level observed), 346-47, 356 (10/15/08 - emergency room visit for a seizure "secondary to

probable subtherapeutic Dilantin level").)   Third, contrary to plaintiff's testimony that he experienced a grand mal seizure at least once per month, the ALJ found that, in 2009, plaintiff told his doctor that he had only experienced 5-10 such seizures in his lifetime.  (A.R. 32; *see also id.* 514 (02/25/2009 - "patient reports having a total of 5-10 seizures in his lifetime . . . exclud[ing] the absence seizures"[3]).   It also shows that, in September 2009, plaintiff told his doctor that he had not had a seizure in over six months.  (*See* A.R. 32; *see also id.* 503 (plaintiff reports in September 2009, that he has not had a seizure since February 2009).)   Fourth, the ALJ found that plaintiff had not produced any records that supported his testimony about the frequency of the grand mal seizures and his compliance with his medications.  (A.R. 32; *see also id.* (plaintiff produced records from Charles Ho., M.D., "presumably his primary care physician," but these records do not identify any difficulties with controlling plaintiff's seizures through medication (referring to A.R. 432-38)).

The ALJ's four reasons for discrediting plaintiff's testimony about the frequency of his seizures and his purported inability to control them effectively with medication are supported by substantial evidence in the record and compelling.  Nevertheless, plaintiff contends that the ALJ erred in discrediting plaintiff, in part, on the ground that plaintiff's medical record indicated noncompliance with his prescribed medication regime.  Specifically, plaintiff contends that the record was ambiguous, if not inadequate, to support an assumption of noncompliance, and, before the ALJ could discredit plaintiff on the basis of noncompliance, he had to first determine whether there were legitimate reasons for plaintiff's subtherapeutic Dilantin levels.  (*See* Joint Stip. at 8-9; *see also* AR 355 (10/16/08 - record from emergency room visit recites plaintiff's statement that, the preceding year, he was hospitalized for Dilantin toxicity as a result of which his Dilantin level was reduced and plaintiff began experiencing more breakthrough events")[4]); *see also* Tonapetyan

---

[3]  The reference to "absence seizures" appears to be plaintiff's alternative phrasing for "small," or petit, seizures.

[4]  Although plaintiff submitted treatment records from 2007, the Court found no records supporting this 2008 statement to an ER physician.

1   v. Halter, 242 F.3d 1144, 1151 (9th Cir. 2001) ("ALJ in a social security case has an independent

2   duty to fully and fairly develop the record and to assure that the claimant's interests are

3   considered"); Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001) (ALJ's duty to develop

4   the record is "triggered only when there is ambiguous evidence or when the record is inadequate

5   to allow for proper evaluation of the evidence").

6

7       Plaintiff's argument is unavailing.  Even if the ALJ erred in discrediting plaintiff on the basis

8   of his subtherapeutic Dilantin levels, the ALJ cited three other clear and convincing reasons for

9   negatively assessing plaintiff's credibility, i.e., (1) the significant discrepancies between plaintiff's

10  testimony and the treatment records about the frequency of plaintiff's seizures, (2) plaintiff's

11  inconsistent statements to the ALJ and to other doctors regarding the frequency of his seizures,

12  and (3) plaintiff's failure to present any objective medical evidence that his seizure disorder

13  renders him unable to work.  See Orn, 495 F.3d at 636.  Accordingly, to the extent that the ALJ

14  erred in failing to contact plaintiff's treating physicians about plaintiff's subtherapeutic Dilantin

15  levels, any such error is harmless, because the ALJ articulated three clear and convincing reasons

16  for his negative credibility assessment.  Cf. Carmickle, 533 F.3d at 1162-63.  The Court therefore

17  finds no error warranting reversal with respect to the ALJ's evaluation of plaintiff's testimony.

18

19      **II.    The ALJ Properly Evaluated The Credibility Of Plaintiff's Sister.**

20

21      The second issue in dispute concerns the ALJ's evaluation of plaintiff's sister's testimony.

22  Like plaintiff, his sister, Martha Ramirez, testified that plaintiff has "big seizures" once or twice a

23  month (A.R. 60-61) and "little ones" two or three times a week (A.R. 64).  She testified that,

24  following a big seizure, plaintiff experiences difficulties with his speech, memory, and balance as

25  well as headaches, dizziness, and body aches and needs more than a day of rest.  (A.R. 62).

26  Ramirez testified that, after a small seizure, plaintiff experiences difficulties with his speech,

27  memory, and balance and needs several hours or more of rest to recover.  (A.R. 63-64.)  Ramirez

28  offered no testimony about plaintiff's compliance with his seizure medication or any difficulty he

1 | experienced with controlling his seizures through medication.  (*See generally* A.R. 60-64.)

2

3 | Observing that Ramirez's statements about the frequency and disabling effect of plaintiff's
4 | seizures "were consistent with the claimant's" statements -- which, as discussed above, the ALJ
5 | had already determined were not credible -- the ALJ accorded Ramirez's statements "little weight."
6 | (*See* A.R. 33.)   The ALJ did not elaborate further on his assessment of Ramirez's lay witness
7 | testimony.

8

9 | Plaintiff contends that the ALJ erred in assessing Ramirez's credibility when he failed to
10 | develop the record further by asking Ramirez about the issue of plaintiff's compliance with his
11 | medication regime. (*See* Joint Stip. at 19-21.)  However, this argument is unavailing with respect
12 | to Ramirez's testimony for the same reasons that it is unavailing with respect to plaintiff's
13 | testimony.   As explained above:   the ALJ cited multiple reasons, beyond plaintiff's apparent
14 | noncompliance with his medication, for discrediting the testimony about the frequency and
15 | disabling effect of plaintiff's seizures; these other reasons were clear and convincing; and thus,
16 | a sufficient basis for the ALJ's determination was provided.  *Cf.* Carmickle, 533 F.3d at 1162-63.
17 | Accordingly, because Ramirez's testimony about the frequency and disabling effect of plaintiff's
18 | seizures so closely matched plaintiff's testimony, and the ALJ (1) noted this and (2) identified at
19 | least three clear and convincing reasons for rejecting plaintiff's testimony, the Court finds no error
20 | warranting reversal with respect to the ALJ's evaluation of Ramirez's testimony.

21

22 | **CONCLUSION**

23

24 | For the reasons stated above, the Court finds that the Commissioner's decision is supported
25 | by substantial evidence and free from material legal error.   Neither reversal of the ALJ's decision
26 | nor remand is warranted.

27

28 | Accordingly, IT IS ORDERED that Judgment shall be entered affirming the decision of the

1  Commissioner of the Social Security Administration.

2

3      IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this

4  Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

5

6      **LET JUDGMENT BE ENTERED ACCORDINGLY**.

7

8  DATED: January 16, 2015

9                                          _Margaret a. Nagle_

10                                         MARGARET A. NAGLE
                                           UNITED STATES MAGISTRATE JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28